75 F.Supp.2d 995 (1999)
UNITED STATES of America, Plaintiff,
v.
FINDETT CORPORATION, et al., Defendants.
No. 4:97CV1557 CDP.
United States District Court, E.D. Missouri, Eastern Division.
September 15, 1999.
*996 *997 Edward L. Dowd, Jr., Maria C. Sanchez, Office of U.S. Atty., St. Louis, MO, Baerbel E. Schiler, U.S. Environmental Protection Agency, Kansas City, KS, Daniel S. Jacobs, U.S. Dept. of Justice, Environmental Enforcement Section, Washington, DC, for United States.
Steven W. Koslovsky, Eugene P. Schmittgens, Jr., Ziercher and Hocker, Clayton, MO, for Findett Corporation.
*998 Julie Emmerich O'Keefe, Emmerich Law Office, St. Louis, MO, for ACF Industries, Inc.
William J. Denton, Jennifer Charno Nelson, Lathrop and Gage, Kansas City, MO, Thomas D. Brown, Computer Sales International, Inc., St. Louis, MO, for General Motors Corporation.
Steven L. Leifer, Baker and Botts, Washington, DC, for Goodyear Tire and Rubber Company.
Joseph G. Nassif, Stacey L. Stater, Thompson Coburn, St. Louis, MO, for Mallinckrodt Chemical, Inc. and Monsanto Company.
Robert J. Wagner, Thompson Coburn, St. Louis, MO, William L. Stewart, Stewart Law Office, St. Louis, MO, for Cadmus Corporation.
Edwin L. Noel, Jeffery T. McPherson, Armstrong Teasdale, LLP, st. Louis, MO, for Milton Tegethoff.

MEMORANDUM AND ORDER
PERRY, District Judge.
This matter is before the Court on the following motions: (1) a motion filed by plaintiff the United States of America for the Court to enter three proposed partial consent decrees, (2) a motion filed by defendant Findett Corporation for an evidentiary hearing, (3) a motion also filed by Findett to enter upon the land of defendant Cadmus Corporation for the purpose of conducting environmental testing, and (4) a motion filed by defendants Monsanto Company and Mallinckrodt, Inc., in support of Findett's motion to enter upon Cadmus' land. The motions have all been fully briefed. For the reasons set forth below, the Court will grant the government's motion, and will deny the other motions.

I. Background

The hazardous waste site in question is known as the Findett/Hayford Bridge Site. The Site consists of three parcels of land: property currently owned by defendant Findett Corporation, property formerly owned by Findett and now owned by the Cadmus Corporation, and property immediately south of the land occupied by Cadmus.
From 1962 through at least 1974, Findett was engaged in the business of recycling and recovering manufacturing fluids, such as heat transfer fluids, hydraulic fluids, and solvents. Some of those fluids contained polychlorinated biphenyls ("PCBs"), which are now known to be hazardous. Findett disposed of some of the waste, including waste containing PCBs, in an open pit or "quench pond" located on its property. Soil analysis shows that the Findett Site is contaminated with PCBs and volatile organic compounds ("VOCs").
The government initiated this lawsuit on July 25, 1997, seeking to recover response costs that it claims it has incurred, and will incur, in responding to releases or threatened releases from the Site. In its complaint, the government named as defendants not only Findett, Milton Tegethoff, Findett's former president, and Cadmus, but also ACF Industries, Inc., General Motors Corporation, the Goodyear Tire and Rubber Company, Mallinckrodt Chemical, Inc., and Monsanto Company. As to the latter five defendants, the government charged that they had arranged "by contract, agreement, or otherwise" for the disposal or treatment of hazardous substances that they "owned or possessed" at the Findett Site. The government claims that through June 30, 1998, its response costs, including interest, total $3,293,909.
After consulting with the parties, the Court, on November 3, 1997, entered an order immediately referring the case to alternative dispute resolution. Also on that date, the Court entered a Case Management Order providing, among other things, that the parties were not to take depositions or propound requests for admission until after the conclusion of the mediation or February 15, 1998, whichever occurred first, but permitting any other form of discovery prior to that date. Under the terms of the Case Management *999 Order, all discovery was to be completed by December 1, 1998.
On February 27, 1998, the government lodged the first of the three proposed partial consent decrees. Under the terms of the first decree, Goodyear agrees to pay $220,000 plus interest into the EPA Hazardous Substance Superfund; ACF agrees to pay $50,000 plus interest into the Superfund, and Cadmus agrees to pay $185,000 plus interest into the Superfund. In addition, Goodyear and ACF agree to pay to the Superfund 11% and 2.5%, respectively, of all of EPA's future response costs that are not inconsistent with the national contingency plan ("NCP"). In exchange for the satisfactory completion by Goodyear and ACF of their obligations under the decree, the government agrees not to sue either of those companies under 42 U.S.C. § 9607(a) to recover past and future response costs. In exchange for the $185,000 from Cadmus, the government agrees not to sue or take any administrative action against that company or four named individuals: one Cadmus officer (Michael Worster) and three Cadmus shareholders (Anthony J. Lowery, Jr., Hugh M. Lowery, and Patrick R. Lowery). The government's covenant not to sue Cadmus is voidable at the government's option, except for the amount of past response costs actually paid by Cadmus, if, based on new information, the government determines (1) that Cadmus' activities or operations have resulted in a "non-negligible" release of hazardous substances at the Site, (2) that Cadmus has failed to exercise due care with respect to any hazardous substance contamination at the Site, or (3) that Cadmus has exacerbated any existing release or threat of release of hazardous substances at the Site. Pursuant to 42 U.S.C. § 9622(d)(2)(B), the government published a notice of the first proposed partial consent decree in the Federal Register, and invited the public to submit comments within thirty days of that publication. 63 Fed.Reg. 11309 (Mar. 6, 1998). The government received one comment, submitted by GM, Mallinckrodt, and Monsanto, objecting to the amount of the settlement with Cadmus.
On August 3, 1998, the government lodged the second proposed partial consent decree with the Court.[1] Under the terms of the second decree, GM, Mallinckrodt, and Monsanto agree to pay the Superfund $1,712,076 plus interest in reimbursement for the government's past response costs. In exchange, the government covenants not to sue any of those three parties to recover any additional past response costs, but reserves the right to bring an action to recover costs that it incurred or will incur which do not fall within the definition of "past response costs." As it did with the first decree, the government published a notice of the second proposed partial consent decree in the Federal Register, and invited the public to submit comments within thirty days of that publication. 63 Fed.Reg. 38668 (July 17, 1998). The government received one comment, submitted by Cadmus, objecting to a provision allowing GM, Mallinckrodt, and Monsanto to continue to oppose the approval of the first proposed partial consent decree.
The government lodged the third proposed partial consent decree on September 16, 1998. In the third decree, Tegethoff (who, as mentioned above, is Findett's former president) agrees to pay $350,000 plus interest to the Superfund in reimbursement for past response costs incurred by the government, in exchange for the government's agreement not to sue him under § 9607(a) to recover any additional past response costs. The government, however, reserves the right to proceed against Tegethoff to recover costs not within the meaning of "past response costs" which it has incurred or will incur. As with the previous two proposed decrees, the government published a notice of the third *1000 decree in the Federal Register and invited public comment. 63 Fed.Reg. 54157.

II. Discussion

In reviewing a proposed consent decree in an action brought under CERCLA, a district court's function is "circumscribed." United States v. DiBiase, 45 F.3d 541, 543 (1st Cir.1995). "[W]hen such ... decrees are forged, the trial court's review function is only to `satisfy itself that the settlement is reasonable, fair, and consistent with the purposes that CERCLA is intended to serve.'" United States v. Cannons Eng'g Corp., 899 F.2d 79, 85 (1st Cir.1990) (quoting H.R.Rep. No. 253, Pt. 3, 99th Cong., 1st Sess 19 (1985), reprinted in 1986 U.S.C.C.A.N. 3038, 3042). In other words, the touchstones of the inquiry are reasonableness, fairness (both procedural and substantive), and fidelity to CERCLA. See United States v. Union Elec. Co., 132 F.3d 422, 430 (8th Cir.1997). Although the only proposed consent decree to which any objections have been raised is the first, and then only as to its treatment of Cadmus, the Court nevertheless believes it necessary to undertake a complete analysis.

A. Fairness
CERCLA's requirement that a consent decree be substantively fair embodies the notion that "a party should bear the cost of the harm for which it is legally responsible." Cannons Eng'g, 899 F.2d at 87. A court should defer to the parties' chosen measure of comparative fault "unless it is arbitrary, capricious, and devoid of a rational basis." Id. "As long as the data the EPA uses to apportion liability for purposes of a consent decree falls along the broad spectrum of plausible approximations, judicial intrusion is unwarranted ...." Id. at 88.
The objections that have been filed since the government's motion to enter the three consent decrees all pertain to the substantive fairness of one aspect of the first decree. Specifically, Findett, GM, Mallinckrodt, and Monsanto object that the government has cut too sweet a deal with Cadmus. Findett asserts that the government has failed to adequately ascertain Cadmus' responsibility for the contamination at the Site, especially whether Cadmus' operations produced the VOCs found there. GM, Mallinckrodt, and Monsanto echo Findett's concerns, and also argue that the government has indicated that it will require remediation of Cadmus' property, and that it will seek to have them and others perform a clean-up of that property. The three companies state that if the government makes such a request, they "anticipate" studying the property further, and that their examination may uncover evidence that Cadmus is responsible for the contamination.
The Court does not believe the objections raised by Findett and the other three companies warrant a decision not to enter the first proposed consent decree. The government has been involved with the Site for close to two decades, and has yet to uncover significant culpable conduct on Cadmus' part. As the government points out, three separate engineering firms retained by EPA have looked into the possibility that Cadmus contributed significantly to contamination at the Site, and concluded otherwise. Cadmus itself offered to conduct soil sampling on its property back in 1989. In addition, the parties, who became aware of the first proposed consent decree's provisions more than a year ago, could have sought to conduct further testing on Cadmus' land during discovery. Given the foregoing, the Court believes there is good reason to defer to the government's considered judgment of the proper measure of Cadmus' liability. As the First Circuit explained in Cannons Engineering, "[W]hat constitutes the best measure of comparative fault at a particular Superfund site under particular factual circumstances should be left largely to the EPA's expertise." 899 F.2d at 87; United States v. Davis, 11 F.Supp.2d 183, 189 (D.R.I.1998) (noting that a court should not substitute its judgment for that of the EPA, and that the agency's conclusions are "entitled to *1001 some deference"); see United States v. Union Elec. Co., 934 F.Supp. 324, 328-30 (E.D.Mo.1996) (finding use of cost allocation formula "not arbitrary and capricious"), aff'd 132 F.3d 422 (8th Cir.1997).
If the EPA turns out to be wrong about Cadmus' role in the contamination on its property, the consent decree contains an explicit "reopener." Under that provision, the government can bring an action against Cadmus if new information demonstrates that Cadmus' activities have resulted in a "non-negligible" release of hazardous substances at the Site, that Cadmus has not exercised due care with respect to any contamination, or that Cadmus has made worse any existing release or threat of release.[2] The reopener is broadly worded on its face, and the Court has no reason to believe that the government would resist invoking it if new information regarding Cadmus did come to light.
The consent decrees are procedurally fair as well. None of the objectors seriously suggest otherwise. The parties were afforded ample time to conduct discovery. In addition, given that the cleanup of the Site began long before this action was brought, a considerable number of reports and studies were at hand at the time of the complaint's filing. The record was thus well-developed. All of the parties were represented by competent counsel, and there is no indication that the negotiations leading up to the consent decrees were anything but arm's length.

B. Reasonableness
A district court's reasonableness inquiry is "a pragmatic one, not requiring precise calculations." United States v. Charter Int'l Oil Co., 83 F.3d 510, 521 (1st Cir.1996). The Court "need not assess whether the government made the best possible settlement." Union Elec. Co., 934 F.Supp. at 331. Rather, in assessing reasonableness, a court looks to the consent decree's "likely efficaciousness as a vehicle for cleansing the environment" and the extent to which the settlement satisfactorily compensates the public for actual and anticipated response costs. See Cannons Eng'g Corp., 899 F.2d at 89-90; United States v. Charles George Trucking, Inc., 34 F.3d 1081, 1085 (1st Cir.1994).
The Court believes that the three decrees, taken together, meet the aforementioned standards. The record indicates that the government's response activities to date have been appropriate and proportionate to the level of contamination at the Site. Further, the decrees provide the government will recover over $2,500,000 of the roughly $3,300,000 that it states it has incurred in response costs (i.e., approximately 75%).[3]See United States v. Kramer, 19 F.Supp.2d 273, 287 (D.N.J. 1998) (approving consent decrees under which government recovered 77% of its total costs). Finally, under the decrees, the government retains the right to proceed against the settlors other than Cadmus to recover costs related to future response activities, and, as discussed above, can sue Cadmus as well if certain conditions are met.

C. Fidelity to the Statute
The principal goals of CERCLA are "accountability, the desirability of an unsullied environment, and promptness of response activities." Cannons Eng'g Corp., 899 F.2d at 91; Charles George Trucking, Inc., 34 F.3d at 1086; Union Elec. Co., 934 F.Supp. at 331. Under the terms of the three proposed decrees, those whom the government has identified as having brought hazardous wastes to the Findett Site will reimburse the government for a sizeable share of the response costs that it has already incurred in cleaning and restoring the Site. Others whose lands comprise that Site will also contribute. The public fisc will be replenished, *1002 and resources better devoted to the Site itself will not be spent dragging out this litigation any longer. See United States v. Hercules, Inc., 961 F.2d 796, 800 (8th Cir. 1992) (noting district court's recognition that settlors' finite resources were better put to use in cleaning the site in question than in conducting further litigation). The Court finds the three decrees faithful to CERCLA's principles.

III. Findett's Request for an Evidentiary Hearing and Its Motion to Enter Upon Cadmus' Land for Purposes of Environmental Testing

Findett contends that the Court should hold an evidentiary hearing on the issue of whether it should enter the first consent decree with respect to Cadmus. Findett argues that numerous substantial factual issues concerning Cadmus' responsibility for contamination at the Site, and that a hearing is therefore necessary. Specifically, in its motion to enter upon Cadmus' land for the purpose of conducting environmental testing (in which Monsanto and Mallinckrodt join), Findett reiterates its contention that the government has failed to conduct an adequate investigation into Cadmus' responsibility for VOC contamination at the Site.
Whether an evidentiary hearing is necessary in order to rule on a proposed consent decree is within the trial court's discretion. Union Electric Co., 132 F.3d at 430. As the First Circuit has observed, "Requiring hearings to review the reasonableness of CERCLA consent decrees as a matter of course would frustrate the statutory objective of expeditious settlement." Charles George Trucking, Inc., 34 F.3d at 1085.
In this case, the government filed its motion to enter the three proposed decrees on November 25, 1998. In the intervening months, the parties have had the opportunity to brief their respective positions at length, and, indeed, have not passed up that opportunity, submitting well over half a dozen memoranda. In light of the well-developed record, the Court concludes that hearing live testimony would not provide any significant assistance to it in rendering its decision.
The Court also finds Findett's request to conduct further testing on Cadmus' property not well taken. For one thing, Findett filed that request well after the close of discovery in this action, which has now been pending for over two years. Findett's vague assertions that it only "recently" discovered the source of significant quantities of chlorine[4] on Cadmus' property cannot constitute good cause for reopening discovery at this late date. Findett offers no evidence to support those assertions, and does not even identify the person or persons who made the alleged discovery or the manner or timing of that discovery, and offers no explanation of how it was prevented from making that discovery any earlier. Indeed, the Court notes that in Cadmus' brief in opposition to Findett's motion, Cadmus avers that between the lodging of the first proposed partial consent decree on February 27, 1998, and the close of discovery on December 1, 1998, Findett did not make any request to enter upon Cadmus' property, and did not propound any interrogatories or document requests to Cadmus.
Findett relies heavily on a soil and groundwater analysis report prepared by the Jacobs Engineering Group, Inc. ("Jacobs"), to support its argument that a more thorough investigation of Cadmus' property is necessary. A review of that report indicates, however, that it was written sometime in the late 1980's, and Findett makes no contention that the government failed to produce the report during the course of discovery. Moreover, the report lends scant support for Findett's position that Cadmus is primarily responsible for pollution at the Site. The subsurface soil samples taken by Jacobs from one *1003 location on Cadmus' property (UA-11) and two locations on Findett's property (UA-12 and UA-13) revealed that the Findett soil had far higher VOC concentrations than did the Cadmus soil. The soil samples taken at UA-11 showed total VOC concentrations of 120 parts per billion ("ppb") and 2,435 ppb at depths of ten and twenty feet, respectively. On the other hand, the soil samples taken at UA-12 and UA-13 showed concentrations of 246,763 ppb (for UA-12) and 4,508 ppb (for UA-13) at a depth of ten feet, and 124,694 ppb (for UA-12) and 425,457 ppb (for UA-13) at a depth of twenty feet. The Court will deny Findett's motion (and that submitted by Monsanto and Mallinckrodt).
Accordingly,
IT IS HEREBY ORDERED that plaintiff the United States of America's motion to enter the three proposed partial consent decrees [# 75] is granted. The Court will sign those decrees this same date.
IT IS FURTHER ORDERED that defendant Findett Corporation's motions to enter upon land of co-defendant Cadmus Corporation for purposes of environmental testing [# 137] and for evidentiary hearing [# 126] are denied.
IT IS FURTHER ORDERED that the motion filed by defendants Monsanto Company and Mallinckrodt, Inc., in support of defendant Findett Corporation's motion to enter upon land of co-defendant Cadmus Corporation for purposes of environmental testing [# 138] is denied.
NOTES
[1] The government originally lodged the proposed decree on July 6, 1998, but resubmitted it to correct a technical error.
[2] The use of a reopener is not unique to this case. See United States v. Kramer, 19 F.Supp.2d 273, 289 (D.N.J.1998).
[3] The Court is this same date granting summary judgment on liability and response costs against Findett, the sole non-settling party.
[4] Findett's theory is that certain unidentified waste materials which Cadmus recycled combined with chlorine already on Cadmus' property to produce VOCs.